PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ROWNEIL A. HORNE, ) | |
| ) | CASE NO. 1:22CV892 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | [Regarding ECF No. 17] |

On April 27, 2023, the assigned magistrate judge issued a Report and Recommendation affirming the Commissioner's final decision regarding Plaintiff's application for Supplemental Security Income benefits. *See* ECF No. 17. Plaintiff timely filed an objection to the Report and Recommendation. *See* ECF No. 18. The Commissioner filed a response to Plaintiff's objection. *See* ECF No. 19. For the reasons stated below, the Court overrules Plaintiff's objection and adopts the magistrate judge's Report and Recommendation (ECF No. 17), affirming the Commissioner's final decision.

**I. Background**

In February 2019, Plaintiff Rowneil A. Horne filed an application for Supplemental Security Income ("SSI"), alleging a disability onset date of October 17, 2016. *See* ECF No. 8 at PageID #: 57, 132. After his application was denied, Plaintiff requested a hearing for reconsideration, which occurred in two parts: first in October 2020, and then in March 2021

(1:22CV892)

before an administrative law judge ("ALJ").[1] *See id.* at PageID #: 57. On April 29, 2021, the ALJ found that Plaintiff was not disabled. *See id.* at PageID #: 68. On March 28, 2022, the Appeals Council declined Plaintiff's request for further review, making the ALJ's denial of benefits the Agency's final decision. *See id.* at PageID #: 48.

Plaintiff then filed his Complaint before the Court. *See* ECF No. 1. The Report and Recommendation issued by the magistrate judge addresses Plaintiff's assignment of error. Ultimately, the magistrate judge held that the ALJ neither erred in its evaluation of Dr. David V. House's opinion nor its formulation of Plaintiff's residual functional capacity ("RFC"). *See* ECF No. 17 at PageID #: 731.

Following the issuance of the magistrate judge's Report and Recommendation, Plaintiff timely raised an objection asserting that the magistrate judge erred in determining that "the ALJ applied the proper legal standards and reached a decision supported by substantial evidence" with regards to Plaintiff's RFC. ECF No. 18 at PageID #: 735. The Commissioner of Social Security Administration responded, requesting that the Court overrule Plaintiff's objection. *See* ECF No. 19.

**II. Standard of Review**

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of a Report and Recommendation to which the parties have made an objection. 28

---

[1] The hearing before the ALJ was initially scheduled for October 1, 2020, but Plaintiff failed to appear. *See* ECF No. 8 at PageID #: 57. Despite Plaintiff's absence, the vocational expert testified during the October 2020 hearing. *See id.* An additional hearing was scheduled for March 10, 2021, during which Plaintiff participated and testified telephonically. *See id.*

2

(1:22CV892)

U.S.C. § 636(b)(1)(C). Parties must file any objections to a Report and Recommendation within fourteen days of service. *Id*.; Fed. R. Civ. P. 72(b)(2). Objections to the Report and Recommendation must be sufficiently specific to focus the court's attention on contentious issues. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). The primary issue then becomes "whether [the Commissioner's] decision is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g). The court's review of the Commissioner's decision in the case at bar is limited to determining whether substantial evidence, viewing the record as a whole, supports the findings of the ALJ. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence exists when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (per curiam).

If substantial evidence supports the Commissioner's decision, a reviewing court must affirm the decision even if it would have decided the matter differently. *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)). Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). This "standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decisionmakers may go

3

(1:22CV892)

either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Id*. (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### III. Discussion

Plaintiff objects to the magistrate judge's Report and Recommendation, arguing that the magistrate judge erred in determining that (1) the ALJ applied proper legal standards when evaluating Dr. House's opinions and (2) that the ALJ's finding of RFC was unsupported by substantial evidence. For these reasons, Plaintiff asserts that the matter should be remanded for reconsideration.

The Court must ensure the ALJ's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers.*, 486 F.3d at 241. The existence of substantial evidence alone "cannot excuse the failure of an ALJ to follow a mandatory regulation that 'is intended to confer a procedural protection' for claimants." *Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *2 (6th Cir. Sept. 3, 2021) (quoting *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 436 (6th Cir. 2018)). Nonetheless, even if the ALJ fails to comply with the proper legal standards, the harmless-error exception may be invoked if the claimant is not prejudiced by the error. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)).

Plaintiff asserts that the ALJ improperly rejected Dr. House's November 2010 opinions because the ALJ failed to comport with the regulatory requirements pursuant to 20 C.F.R. § 416.920c(b)(2). 20 C.F.R. § 416.920c(b)(2) requires that the ALJ explain their consideration of

4

(1:22CV892)

the "supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in their evaluation. 20 C.F.R. § 416.920c(b)(2).

Both parties in this action concede that the ALJ reviewed Dr. House's opinions even though she did not ultimately rely on his opinions. The ALJ regarded Dr. House's November 2010 opinions as unpersuasive because "they are from 2010, are outside the relevant time period, and are remote in time." ECF No. 8 at PageID #: 65. Additionally, the ALJ provides that "[s]ubsequent records and evidence have been submitted and are considered more relevant and supportive of the residual functional capacity stated herein." Id. Plaintiff argues that the ALJ should not have simply discounted Dr. House's opinions because it predated the relevant time period and that the ALJ failed to address the supportability and consistency factors with regard to Dr. House's opinions before rejecting them.

It is apparent that the ALJ provided good reasons for rejecting Dr. House's opinions based on the ALJ's explanation that Dr. House's opinions were not only outdated, but also inconsistent with more recent and relevant medical opinions. As Plaintiff notes, however, the ALJ did not explicitly analyze the supportability and consistency factors, as instructed by 20 C.F.R. § 416.920c(b)(2), in her evaluation of Dr. House's opinion. Nonetheless, this error does not prejudice Plaintiff as it does not detract from the ALJ's ultimate decision, because the ALJ "implicitly provided sufficient reasons for not giving [the opinion] controlling weight." Nelson v. Comm'r of Soc. Sec., 195 F. App'x 462, 472 (6th Cir. 2006).

The ALJ does not disregard Dr. House's November 2010 diagnoses of Plaintiff— including posttraumatic stress disorder, panic disorder with agoraphobia, a history of polysubstance abuse, and moderate mental retardation—some of which were also mentioned by

5

(1:22CV892)

other examining physicians. See ECF No. 8 at PageID #: 64, 461–62. Rather, the ALJ relies on more recent treatment records to conclude that despite Plaintiff's history of mental health challenges, the notations in Plaintiff's more recent medical records from the relevant time period appear inconsistent with Dr. House's opinions. See ECF No. 8 at PageID #: 63. For example, the ALJ explains:

> Despite his presentation at psychological consultative evaluations, prison records from 2012 and 2016 noted average intelligence, intact memory, and normal presentation, such that he was housed in the general population (3F; 11F/10, 16). Records from March 2020 also noted the claimant denied any complaints generally; denied emotionality and hallucinations; appeared clean and groomed with no unusual behavior; was alert and oriented with clear speech; was not involved in the mental health caseload; and routine housing assignment was requested (11F/6-10). Treatment records also do not show mental health treatment while he was incarcerated, and recent records from March 2020 noted there was no mental health problems/history reported by the claimant (3F; 11F/7). Additionally, notes from October 2017 indicated the claimant was able to independently attend scheduled appointments with his parole officer and he was able to read and write without assistance (9F/9). Overall, the record did not demonstrate extensive or repeated hospitalizations, emergency room visits related to his severe impairments, invasive procedures, or required physician intervention. Therefore, the undersigned concludes that the record does not establish limitations of the level and severity as the claimant alleged and that would preclude all work activity. While the record supports some degree of limitation from the claimant's impairments for the relevant period, the exam findings, imaging, and testing do not support a greater degree of limitation than that which is set forth in the above residual functional capacity assessment.

*Id.*

The ALJ also cited other medical opinions inconsistent with Dr. House's opinions, including opinions written by Dr. Michael Faust, and two state agency consultants, Dr. Robin

6

(1:22CV892)

Benis, and Dr. Dorothy Bradford. The ALJ summarized the medical opinions of these physicians as follows:

> The undersigned also read and considered the opinions from Michael Faust, Ph.D., submitted after psychological consultative evaluation on February 15, 2017 (4F). On examination, the claimant yielded a full scale IQ of 40, placing him within the extremely low range of intellectual ability with notes indicating the score was lower than expected due to low frustration tolerance and a tendency to give up easily on tasks that he viewed as difficult (7F/6). He was diagnosed with major depressive disorder, recurrent, severe without psychotic features; posttraumatic stress disorder; and intellectual disability, mild (7F/6-7). The examiner also noted that the claimant "was so depressed and withdrawn that he failed to put forth good effort and his performance was viewed as invalid" and "he did tend to be very withdrawn and depressed, leading to deteriorated performance beyond the extent of his intellectual limitations" (4F/7). Dr. Faust opined that the claimant had limitations in his ability to understand, follow, and remember written instructions and difficulty understanding, remembering, and carrying out verbally-presented instructions. He went on to opine that the claimant had limitations in work pace, and attention and concentration levels were low; and would be expected to exhibit difficulty in responding to supervision and coworkers in a work setting (4F/7-8). Dr. Faust also opined that the claimant had limitations in his ability to respond appropriately to work pressures in an employment setting (4F/8). Overall, the undersigned finds these opinions to be somewhat persuasive, noting that the opinions were provided prior to the relevant period. Despite the remoteness of the opinions, the in-person evaluation noted the claimant's presentation as very simple and concrete in thinking; history of special education services; and history of significant trauma and abuse with reports of nightmares, intrusive memories, and flashbacks. The exam findings support diagnoses of posttraumatic stress disorder; major depressive disorder; and mild intellectual disability (4F/3-7). However, the findings regarding the full-scale IQ score of 40 are also considered with the notes indicating that the performance was viewed as invalid due to failure to put forth good effort. Additionally, the opinions as to the claimant's specific levels of limitation are not persuasive as they are stated in vague terms, noting the claimant would have "limitations" or "difficulty" in areas of mental functioning, but did not state the limitations in

(1:22CV892)

> vocationally relevant language. Additionally, the notes regarding the claimant's performance on testing are not fully consistent with the prison records from 2012 and 2016 mental evaluations noting average intelligence, intact memory, and normal presentation, such that he was housed in general population; and prison treatment records showing a lack of mental health treatment while he was incarcerated (3F; 11F) . . . .
>
> The undersigned read and considered the opinions regarding the claimant's physical impairments and limitations from the State agency consultants Rannie Amiri, M.D., dated April 2, 2019, and Sreenivas Venkatachala, M.D., dated July 8, 2019 (1A; 3A). The consultants opined that the evidence did not support finding a severe physical impairment. These opinions are persuasive as they are supported by the physical exam findings from March 2019, which were unremarkable and noted normal range of motion, normal strength in all areas tested, and normal ambulation (5F). These opinions as to the claimant's physical impairments are supported by and consistent with the overall evidence of record and are therefore persuasive.
>
> The undersigned also read and considered and finds persuasive the opinions from Dorothy Bradford, M.D., submitted after physical evaluation in March 2019 (5F). Dr. Bradford opined there were no activity restrictions (5F/7). Dr. Bradford's opinions are supported by the findings on physical examination noting he had normal strength in all muscle groups; normal range of motion of all joints; no edema; no apparent limp, shuffle, or other disturbance; and his gait was even and regular (5F/7). Physical exam findings also noted motor strength was 5/5 and equal in all four extremities; deep tendon reflexes were +2/4 and equal bilaterally; muscle spasms were not present; and grasp, manipulation, pinch, and fine coordination was all normal in both upper extremities (5F/2-7). For these reasons, the undersigned finds Dr. Bradford's opinions to be persuasive.
>
> Likewise, the undersigned also considered and finds persuasive the opinions from Robin Benis, M.D., submitted after evaluation on February 6, 2017 (8F). After examination, Dr. Benis opined that the claimant had no physical limitations. These opinions are persuasive as they are supported by the physical exam findings noting normal gait; full squat; normal stance; and no help needed in changing for the exam or getting on and off the exam table

8

(1:22CV892)

>(8F/2-5). The opinions are further supported by the physical exam findings showing full range of motion, normal strength on all areas tested, and normal manipulative abilities bilaterally (8F/6-9). These findings are also consistent with the overall evidence. For these reasons, the undersigned finds Dr. Benis' opinions persuasive.

Id. at PageID #: 64-66.

The Court finds that Plaintiff's medical history and treatment records substantially support the ALJ's determination that Plaintiff "has the residual functional capacity to perform a full range of work at all exertional levels" with some non-exertional limitations.  ECF No. 8 at PageID #: 61.  The ALJ's conclusion is within a zone of choice supported by the record.[2] Accordingly, any error that the ALJ committed by not strictly complying with the agency's legal standard is harmless, especially given that the ALJ's evaluation of Dr. House's opinion made "clear to a reasonable reader why the opinion . . . was not accepted."  Smalley, No. 20-1865, 2021 WL 4026783, at *4.  Because Plaintiff is not prejudiced by the ALJ's error, the Court overrules Plaintiff's objection.

## IV. Conclusion

For the foregoing reasons, the Court adopts the magistrate judge's Report and Recommendation (ECF No. 17), overruling Plaintiff's objection and affirming the

---

[2] The Court agrees with the Commissioner's explanation that the magistrate judge's comment that "the ALJ analyzed and weighed other medical evidence" was merely another way to characterize the ALJ properly performing her responsibilities by evaluating the entire case record.  ECF 19 at PageID #: 740.  The ALJ clearly detailed her determination of the persuasiveness of the medical opinions before her.  See ECF No. 8 at Page ID #: 64–66

(1:22CV892)

Commissioner's final decision. Judgment will be entered in favor of Defendant through a separate Judgment Entry.

IT IS SO ORDERED.

| | |
|---|---|
| September 28, 2023 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |

10